[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is an action for dissolution brought by the plaintiff husband against the defendant wife. Both parties are 30 years of age. The parties were married in Derby, Connecticut, in February of 1987. They had lived together previously in the same house on Botsford Road, Newtown, just prior to their marriage.
At the time of the marriage, the defendant was pregnant with their first child, Ashley, who was born on July 14, 1987. A second child was born August 26, 1988. CT Page 9921
Both parties have lived in this state for more than one year prior to the institution of this action, and neither party has been the recipient of any state aid.
The marriage has broken down irretrievably with no hope of reconciliation. The cause of the breakdown appears to be a combination of factors with many arguments between the parties resulting in the defendant walking out on occasions and on the last occasion the plaintiff walked out. The defendant complained that the plaintiff drank and used cocaine, that he was seldom home, working seven days a week and at least three nights a week until 9:00, 10:00 at night. She also complained that he had affairs with other women and with one particular woman on two occasions.
The plaintiff complained that the defendant was jealous of him and that he, also, was jealous of her and they accused each other of infidelity. He also complained that they had arguments in front of the children and that the defendant had walked out on several occasions.
Prior to the last walkout, the plaintiff left the defendant in the house in which they were living on Botsford Hill Road in Newtown and moved into another house in which he participated in purchasing under the name of Michel Realty Limited on 267 Elm Street in Monroe. The defendant remained in Newtown for about three month: then followed him down to the Elm Street home where she is presently residing. After she moved in, he moved out and resided with his parents who live next door to the Elm Street home. He is presently still residing there.
At the time of the marriage the defendant was a school bus driver working for her father's bus company in Monroe. She stopped working when she was having the children but returned to work after each birth. She was able to drive the bus because her father permitted her to take her children with her.
From the fall of 1987, after the birth of Ashley, she began suffering what became diagnosed as chronic fatigue syndrome, and after visiting several doctors, ended up with treatment at the Connecticut Health Center in Farmington. The director of that center testified as to her condition and the treatment which he prescribed. He saw her in 1989, 1990, and 1991, and as a result of medication which she is still taking, she was able to return to work on a part time basis. The paychecks paid her in 1990 and 1991 indicate a biweekly gross of between $200.00 and $375.00 a week. However, during the summer, she is unemployed because the schools are closed and her income CT Page 9922 is reduced to unemployment compensation of some $81.00 a week.
She hopes to be able to go back to work but not until after the children are in school, feeling that the need to provide a babysitter for the children or day care would cost so much ($5.00 an hour for the babysitter) that it would not be worthwhile for her to go to work now. This was particularly true at this time since she said her father's bus schedules had been reduced and there was not as much work as there had been.
The defendant is presently living in the Elm Street home paying $230.00 a month which covers the taxes and maybe the mortgage. This is obviously a very low rent and one which she could not duplicate any other place. However, this house is owned by Michel Realty Company which consists of about nine individual partners. According to the trade certificate (exhibit 2), she is one of the partners as is her husband having made a contribution of some $25,000.00. The total price of the house was $225,000.00. The plaintiff values his interest in the house as $18,000.00 although it is not clear on what basis he does that.
There is also a problem with the defendant living next door to her in-laws since she and the in-laws do not get along. She complains that they shout at her kids in the yard and that, they have never liked her. On the other hand, the plaintiff said that the in-laws have acted as babysitters.
The plaintiff, at the time of the marriage and presently, is a mechanic in a gas station where he and his employer claim he works only 40 hours a week at $10.50 an hour. However, both of them also say that he is there until 9:00 or 10:00 at night frequently, working, presumably, for himself or for his friends on their cars. He says he does not receive any money for this but he might receive barter. The defendant says he is paid in cash although sometimes they give him beer, to which she objects, and he used to work seven days a week and he has now cut it down and no longer works on the weekend. She would also complain that he never got home until 10:00 at night two or three nights a week.
The plaintiff also has income from his interest in BMT Realty which paid him profits of $3,100.00 for last year. He also has an interest in other property owned by the Michel Realty Company in which he has a 1/24th interest which appears to amount to $50,000.00 (see exhibit 5), although he values it his affidavit at $18,000.00.
The evidence concerning the plaintiff's assets and income appear seriously understated. For example, in the CT Page 9923 plaintiff's affidavit of July 10, 1991, he values the property at 20 Botsford Hill Road at $91,000.00. This is property he purchased in 1986 for $100,000.00. In March of 1991 he valued this property at $110,000.00 with a $55,000.00 mortgage. In July the mortgage was listed at $105,000.00 presumably a "mortgage" given to his mother in 1987, a year after he bought the property using $50,000.00 she had given him without any documentation. This mortgage was given one year after he bought the property and four days before his marriage to the defendant. It calls for payment on demand with no provision for any periodic payments and none appear to have been made. His March, affidavit, furthermore, did not contain any mention of a mortgage to his mother but did contain a written on debt to her of $50,000.00. This affidavit apparently was not filed although it was signed by the plaintiff (see exhibit 3).
Moreover, the plaintiff listed the rent for that property at $91.00 a week, a low rental for a house in Newtown. He acknowledged that the rent was low saying that the tenant was, a cousin who would leave when the property was sold. However, in the March affidavit the rent was $150.00 a week.
The plaintiff listed the Botsford property for sale originally at $170,000.00. Now he says that the selling price has been reduced to either $130,000.00 or $140,000.00, but he continues to value it in his affidavit at $91,000.00.
The plaintiff's list of the amount of his interest in 450 Monroe Turnpike is also questionable. He valued the property on March 14 at $2,000,000.00 and his interest at $80,000.00. In July he values his interest at 1/24th, although there is no evidence to establish that, or $28,583.00 after deducting a mortgage of $11,667.00. The details of this were not established either, and there was no indication of the total value ascribed to the property by the plaintiff by July of 1991 except that 1/24th interest equaled $40,250.00 from which the mortgage of $11,667.00 was to be deducted.
These figures apparently envisage a total evaluation of $966,000.00 for the property which is a little more than was set forth in the July 10th affidavit and quite a bit less than what was set forth in the March 14th, 1991, affidavit when the property was valued at $2,000,000.00 (see exhibit 3). The only evidence of any value was the valuation on the affidavits which varied as is indicated above and the assessment — which was for $1,207,500.00 (see exhibit k) which appears to have been computed after September of 1990. Using the assessed figure and deducting the $280,000.00 mortgage, would give the plaintiff an interest of $38,645.83 or $10,000.00 more than his affidavit reflects. CT Page 9924
The plaintiff's evaluation of 267 Elm Street is also suspect. In March he valued the property at $200,000.00 and his equity at $15,000.00. In July he valued the property at $165,000.00 and his interest at 1/9th or $18,333.00. There was no appraisal of this property. The only evidence of its value was the purchase price in 1988 of $225,000.00 when its assessed value was $207,100.00 by an assessment dated December 22, 1987 to January 4, 1988. In other words, he reduced the assessment by 20 per cent with no evidence to support that method of evaluation.
In addition, while the claim has been made by the plaintiff that the defendant had no interest at all in Michel Realty Company, his 1/9 interest is computed on the basis of his wife having a similar 1/9 interest (see exhibit 2, Trade Name Certificate). It is also interesting to note that in exhibit 2 a letter from Attorney John Bashar to the Tax Collector of the Town of Monroe states that Michel Realty Limited is a general partnership which purchased the property known as 267 Elm Street, Monore. Again, there was no partnership agreement introduced, and in fact, the effort seemed to be to be sure that none was introduced.
Nevertheless, on the basis of the figures indicating the plaintiff's interest in the property as extrapolated by the court from the assessment, the plaintiff's interest should be $23,011.11 and the defendant, likewise, with a 1/9th interest would have a similar value to her interest in that property.
Consequently, plaintiff's assets must be increased to reflect the above figures.
Moreover, as was set forth above, his earnings appear also to be understated. His hourly rate according to his employer is 10.50 an hour. If he worked, as the evidence established, a minimum of three nights a week from 7:00 p. m. to 10:00 p. m. and also Saturday and Sunday, it would appear that he put in an additional 15 to 20 hours a week. To arrive at his earning capacity, the court must take this into consideration. On that basis, it would appear that his earning capacity was at least $150.00 more than his stated earnings as reflected on his affidavit af $420.00 gross.
In addition, the rent he is charging for the Botsford Hill Road is below what the court would find the reasonable value for the rental of the whole house Newtown and also below what he said he was charging in March, 1991. In addition, the amount he claims to have received as rent from 450 Monroe Turnpike appears to be inaccurate. The report from BMT, exhibit CT Page 9925 5, indicates rent in the amount of $3,170.00 was paid to him in 1990. The plaintiff states in his affidavit that he receives $23.00 a week from that when it would appear that it should be more like $60.96 there being no evidence that this amount was reduced in 1991. Taking the $60.96 as the appropriate amount for the rent, this would mean that the total income from Botsford Hill Road, 450 Monroe Turnpike and the loan receivable from BMT would equal $226.54. Deducting the mortgage of $180.93 and taxes, would leave a balance of $45.61 as the net from those items. Adding these to the earning capacity which the court finds to be $600.00 a week, makes the total weekly earnings of the plaintiff in the neighborhood of $645.00 a week. However, an allowance has to be made for taxes and FICA, so the court will find that the approximate weekly earnings of the plaintiff are $600.00 a week or a net of $513.47 after taking out income taxes.
This brings the total earnings of the parties to $619.47, and the guidelines provide that for two children 38 per cent of the total disposal weekly income is appropriate or $235.40. The defendant's share of this is 17 per cent so the plaintiff's share is 83 per cent. Eighty-three per cent of $235.40 equals $195.38.
It should be noted that the Botsford Hill property was obtained by the plaintiff before the marriage, but his interest in the other two pieces appear to have been obtained by him after the marriage. In addition, in 1987, after the marriage, he cashed in a savings account which was in his name and his mother's for over $12,000.00 (see exhibit N). However, he stated that the money there was his. In addition, in 1990 he loaned BMT Realty over $4,000.00. Moreover, in 1988 he gave a check for $25,000.00 for the purchase of an interest in BMT Realty Company which was then buying the house on 267 Elm Street where he and his wife were then living.
In addition, the defendant received a workman's compensation settlement for an injury she had in the course of her employment. The settlement amounted to some $6,000.00, part of which was used to buy a Lincoln Continental for the plaintiff and the rest went into their joint account. She also worked, as has been noted, during the marriage, and her earnings were used jointly with those of the plaintiff for household expenses. She was also caring for the children and the house while working.
Having considered all of the evidence and the factors delineated in Connecticut General Statutes 46b-82 and 46b-84, the court makes the following findings and orders:
1. The marriage has broken down irretrievably with no hope of CT Page 9926 reconciliation, and it is hereby dissolved.
2. The parties were married in February, 1987, and this action was brought in February of 1991.
3. Both parties have lived in this state for more than a year prior to the institution of this action.
4. Neither party has been a recipient of state aid.
5. Both defendant and plaintiff complain of health problems, but each appears able to do some work. The defendant on a part time basis; the plaintiff on a full time basis.
6. Custody of the two children by agreement of the parties is awarded to the defendant with reasonable rights of visitation to the plaintiff, and this arrangement appears to the court to be in the best interests of the children.
7. The plaintiff shall pay to the defendant the sum of $195.38 a week for the support of the two children.
8. The plaintiff shall also provide, medical, hospital and dental insurance for the two children and shall share with the defendant equally the cost of unreimbursable medical expenses.
9. The plaintiff shall also provide life insurance in the amount of $50,000.00 with the defendant as irrevocable beneficiary until such time as the youngest child reaches the age of 18.
10. The plaintiff shall pay the defendant the sum of $150.00 a week alimony until her death, remarriage or cohabitation within the meaning of the statute.
11. The plaintiff shall transfer to the defendant all his right, title and interest in the property at 267 Elm Street or, in the alternative, shall pay the defendant the sum of $22,011.01 as representing his share in the ownership of the property by Michel Realty Limited, the option to be exercised by the defendant.
12. The plaintiff shall retain title to the Newtown real estate known as 20 Botsford Hill Road and his interest in the partnership interest in 450 Monroe Turnpike.
13. The furnishings located at 267 Elm Street, Monroe, shall be the property of the defendant except for a weight bench and a set of weights and a selection of dishes to which the CT Page 9927 parties shall agree. If they are unable to agree, the matter may be referred to Family Relations, and the court will retain jurisdiction in order to enforce any recommendation made by Family Relations. All the other furniture, furnishings and household items shall be the property of the defendant.
14. This decision is made on the assumption that the defendant will continue to live at 267 Elm Street at a rent of $230.00 and that she will not be earning more than $150.00 a week should she decide to work and is able to make suitable arrangements for the children. If she is not permitted to do so and must find other accommodations, that would constitute a change in circumstance warranting a consideration of a change in the periodic alimony order.
15. A contingent wage order execution will issue.
It is so ordered.
MARGARET C. DRISCOLL STATE TRIAL REFEREE